WINGATE HAYES, Receiver, *v.* GEORGE A. KENYON.

The court will not entertain a second application for a new trial by the same party and in the same cause, unless it appears or is shown, that the party did not know, and could not have known the grounds upon which the *second* application rests, at the time the former application was submitted.

THIS was a petition for a new trial, brought to set aside a verdict in an action of assumpsit, which charged the defendant

with the value of certain securities of the Warwick Bank, alleged to have been illegally withdrawn and appropriated by the defendant. A similar application, by motion, but for other causes, had been before presented by the defendant, and disposed of by this court, at its March Term, 1862, and may be found reported, *supra*, page 136. The opinion of the court sufficiently states the ground of the petition, and the state of facts which governed its disposition.

*George A. Kenyon, pro seipso.*

*Wingate Hayes, receiver, pro seipso.*

BULLOCK, J. This is a *second* application for a new trial, under section 2, Ch. 193 of the Revised Statutes: a former motion, for alleged misrulings and refusals to charge by the Chief Justice who tried the cause before a jury, having been already considered and overruled.

The petition states, that the verdict was rendered in misapprehension and mistake on the part of the jury, in supposing that, on the 14th day of January, 1859, when business important to the bank was transacted, and when, it is alleged, the liability of the defendant accrued, no *quorum* of directors was present, when, in fact, no such question could arise out of any testimony offered at the trial. That he was not aware, until after the testimony had been finally closed upon both sides, that such an enquiry was material or relevant to the issue; that he could then have proved, and can now prove, that at the time referred to, a *quorum* of directors was present and acting; and that he was precluded from availing himself of these facts under his former motion by reason of an accident to a member of his family.

The law intends to give to all whose supposed rights are controverted, in a court of justice, a full and impartial hearing; but this is, and can be, done only through the medium of certain forms and rules, approved by experience, prescribing the manner in which the right claimed is to be asserted. It is said, the law comes only to the vigilant, which means no more than that parties shall enforce, or seek to enforce, their claims seasonably, that is, at the proper time, and in the mode provided for and appropriate to the end. This cause was tried, and a verdict rendered, at the September term, 1861. The *former* motion for a new trial was

argued at the March term, 1862. The petitioner admits that he became aware of the materiality of the evidence, upon which he grounds his present motion, during the course of the jury trial. No accident, therefore, occurring to his family on the morning of the day when the former motion was argued, can excuse him for not embracing this among the other causes then assigned for a new trial. For the court will not entertain a *second* application for a new trial, by the same party and in the same suit, unless it appears or is shown that the party did not know, and could not have known, the grounds upon which the *second* application rests, at the time the former application was submitted. For this reason, therefore, the petition should be dismissed; but, as the petitioner was not, at the hearing of this motion, represented by counsel, we further consider his application. He states that, " all he heard," at the trial, about the *number* of directors present at the bank, on the day named, was in the closing argument of the plaintiff's counsel, and in the charge of the court. If, therefore, no testimony was, in fact, adduced to this point, then the counsel commented upon, and the Judge adverted to, and without objection, matter not in the case. From an examination of the minutes of the testimony, we think it appears that evidence was introduced tending to show, and we must suppose offered to show, what directors were present at the bank on the day named. Without reciting it in detail, it is sufficient to refer to the testimony of Pierce, himself a director, who swears that he was sent for, just at night, to transfer his stock; that he went, transferred his stock, and left, no business being done while he remained; that George and John Kenyon were present, and some strangers, naming no one else; and the testimony of this petitioner, who swears that his brother said, there would be no vacancy in the board until Pierce came and resigned. " McLean was then elected a director in the place of Pierce. Spooner was also elected a director, and president. It may be that Foster was first elected a director." " Next to Pierce, I transferred all my stock to Spooner and McLean, to make them directors." Riggs also speaks of the *number* of *old* directors present, and of *two* being sent for; states that, at a meeting of the *new* board, George Kenyon having left, only *three* were present, viz., McLean,

Spooner and John H. Kenyon; says the old board passed some votes. It further appeared, that at the time the plaintiff objected to evidence of some action by the new board, because only *three* directors were present. John H. Kenyon testifies, there were *seven* directors in all on the 14th day of January ; names them ; states who of them were present, and who not; says it was a *special* meeting of the board, and not an adjourned one, &c. And in view of the nature of the action, it would seem that evidence to this point was not only relevant and material, but it might have been necessary to the plaintiff's right to recover. He sought to charge the defendant with the value of certain securities, on that day confessedly the property and in the possession of the bank. The subsequent possession, by the defendant, of these securities, he did not deny. He claimed title to them under an assignment from the bank, or its ostensible officers. The validity of this assignment the plaintiff impeached, and this involved the questions : was this *special* meeting of the directors duly called ? was a legal *quorum* present and acting ? were the acts done within the legitimate scope of their authority ? If the evidence negatived all or either of these propositions, the plaintiff was entitled to recover, since the proof not only did not show the defendant a *bona fide* purchaser or assignee for value, but did show him up to, and on that day, the president of this bank, and cognizant of, and privy to, a transfer to himself of a portion of its *discount* assets in a manner unusual, if not extraordinary. It appears, therefore, upon the record, that the grounds upon which the defendant, for a second time, seeks a new trial have, in effect, already been considered and passed upon.

The *general* verdict affirms, as a fact, the hypothesis upon which the case of the plaintiff proceeded, namely, that the mode in which the defendant derived his alleged title to the securities in question was irregular, unauthorized, and so, illegal,—and that no title passed thereby. If the plaintiff has not, by *express* proof, shown that a less number than *four* legal directors were present, joining in, or assenting to, this transfer, there is enough, in the proof, of the manner in which the *special* board assembled on that day, and of the mode in which they dealt with the assets of this bank, to sustain this verdict. Petition dismissed, with costs.